United States *v.* Witte Cutlery Co. (No. 1694).[1]

1. Construction—Paragraph 128, Tariff Act of 1913.

The proviso to paragraph 128, tariff act of 1913 ("that blades, handles, or other parts of any of the foregoing knives, razors, or erasers shall be dutiable at not less than the rate imposed upon the knives, razors, and erasers of which they are parts") does not mean that parts, to be included in the proviso, must be imported with the other parts of the article.   The expressions "foregoing knives, razors, or erasers" and "of which they are parts" refer to knives, razors, or erasers generically, and not to the particular ones which might be entered under the paragraph.

2. Razor Blades, How Dutiable.   ·

Razor blades, designed to become parts of razors valued at more than $1 per dozen, are dutiable at 55 per cent ad valorem, under paragraph 128, tariff act of 1913, and not as metal articles under paragraph 167.

United States Court of Customs Appeals, June 6, 1916.

Appeal from Board of United States General Appraisers, Abstract 39313.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

*Jules Chopak, jr.*, for appellee.

[Oral argument May 16, 1916, by Mr. Hanson and Mr. Chopak.]

. . Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Montgomery, Presiding Judge, delivered the opinion of· the court:

Razor blades imported at the port of New York were classified by the collector of customs under the first proviso to paragraph 128 of the tariff act of 1913 and. assessed for duty at 55 per cent ad valorem.    Paragraph 128, in so far as it is pertinent to the case, reads as follows:

128. Penknives, pocketknives, * * * erasers, * * * and · razors, all the foregoing, whether assembled but not fully finished or finished; valued at not more than $1 per dozen, 35 per centum ad valorem; valued at more than $1 per dozen, 55 per centum ad valorem: *Provided*, That blades, handles, or other parts of any of the foregoing knives, razors, or erasers shall be dutiable at not less than the rate herein imposed upon the knives, razors, and erasers of which they are parts.    * * *

---

The importers protested that the proviso covers only the blades, handles, or other parts of such razors as are imported unassembled, and relied on the claim that the goods were articles of metal, dutiable at either 20 per cent or 50 per cent ad valorem under the provisions of paragraph 167 of the tariff act of 1913, which paragraph reads as follows:

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

The evidence in the case establishes that the razor blades in controversy were imported into the country to be made up into razors ready for use by riveting them to handles and then honing and setting them. The handles and rivets used are of domestic manufacture.

The board found as a fact that the razor blades in question were not imported with the handles of the razors of which the blades were destined to be a part, and virtually held as a matter of law that the first proviso to paragraph 128 was applicable only to blades imported with the handles and other parts destined to be fitted to such blades in order to constitute razors. The protest was therefore sustained by the board, and the Government appealed.

The decision of the board in this case and the contention of the importer finally reduce themselves to the single proposition that the proviso to paragraph 128 covers parts of unassembled razors and is not applicable to any of such parts unless they be imported with the complementary parts necessary to constitute the entireties known as razors.

We find nothing in the proviso which warrants the limitation put upon its operation by the board and contended for by the importers. The blades, handles, and other parts provided for are the blades, handles, and other parts of razors, and not the blades, handles, and other parts of assembled or unassembled razors. When it comes to imposing the rate of duty, however, it is true that the Congress does declare that blades, handles, and other parts of razors should bear a rate of duty not less than that imposed upon the razors "of which they are parts." The phrase, however, "of which they are parts" does not necessarily imply that the blades, handles, etc., must be actual parts of assembled razors or unassembled razors rather than of razors of which they are destined to become parts.

Technically the language of the proviso "blades, handles, or other parts of any of the *foregoing* knives, razors," etc., would mean the parts of razors already assembled. But obviously this is not the sense in which the reference to "any of the foregoing knives, razors,"

etc., was employed. The reference to "any of the foregoing knives, razors," etc., is to be held to be a reference to these terms generically, and refers to razors, knives, etc., of the class described in the enacting portion of the paragraph. This is essential in order to give force and effect to the proviso, and in this sense would include parts, though parts of unassembled razors.

Precisely the same consideration should influence us to a conclusion that the reference by the terms "of which they are parts" is to be treated in the same manner. This statement is for the purpose of fixing the dutiable value of the razors. These knives, blades, handles, etc., are parts of a class of razors valued at not more than $1 per dozen or at more than $1 per dozen. Now, for the purpose of defining the rate of duty a somewhat clumsy statement is employed that "they shall be dutiable at not less than the rate herein imposed upon the knives, razors, and erasers  *  *  *  of which they are parts," and the words "of which they are parts" refer back to the two classes of razors, one valued at $1 per dozen and the other valued at more than $1 per dozen. There is no indication to our minds that this proviso was intended to provide for unassembled razors; but it provides for parts of razors not yet assembled. Having so provided, the further purpose is evident by the proviso to fix a duty at a rate not less than that which by the previous terms of the paragraph had been imposed upon razors, and as two rates of duty were imposed upon different grades of razors it was necessary to distinguish them, and this distinction is made by providing that they should pay no less rate of duty than would the razors of which they are parts—that is, of which they were designed for and suitable to become parts of—would pay.

In the present case the value of the razor blades is admitted to be $2, and from this it is very clear that the razors of which they will form parts will be worth more than $1 per dozen.

The decision of the Board of General Appraisers is *reversed.*

---

DISSENTING OPINION.

SMITH, Judge:

I regret to say that I can not agree with the majority opinion as to the construction which should be placed on paragraph 128, and particularly on the first proviso thereof.

Paragraph 128, in so far as it is pertinent to the case, reads as follows:

128. Penknives, pocketknives,  *  *  *  erasers,  *  *  *  and razors, all the foregoing, whether assembled but not fully finished or finished; valued at not more than $1 per dozen, 35 per centum ad valorem; valued at more than $1 per dozen, 55 per centum ad valorem: *Provided,* That blades, handles, or other parts of any of the foregoing knives, razors, or erasers shall be dutiable at not less than the rate herein imposed upon the knives, razors, and erasers of which they are parts.  *  *  *

In determining the interpretation to be put upon the provision cited, it is important to note that the enacting clause did not provide for razors and other articles whether finished or unfinished. Had it done so, the enacting clause would have covered both assembled razors and unassembled razors. United States v. Auto Import Co. (168 Fed., 242); Park & Tilford v. United States (1 Ct. Cust. Appls., 34, 35; T. D. 31006); Isaacs v. Jonas (148 U. S., 648). The fact that Congress did not so provide, but preferred to insert the limiting words "whether assembled," would seem to indicate a legislative intention to confine the enacting clause to assembled razors, and that conclusion is fortified by the language which Congress saw fit to use. The phrase "razors, * * * whether assembled but not fully finished or finished," as it stands, and without implying or adding other words, signifies razors if assembled, finished or unfinished, because the word "whether" may be employed as the equivalent of "if" or "in case." (See "Whether," Standard Dictionary.) Sometimes in using the word "whether" the correlative "or" or "or whether" is implied, but in the phrase under consideration the "or" is present, and if "or whether" or "whether" be implied it results in the same construction; that is to say, the phrase as implied would read, "razors, * * * whether assembled but not fully finished or *assembled* finished," or it would read, "razors, * * * whether assembled but not fully finished or *whether assembled* finished." It is true that sometimes an alternative is introduced by "whether" and an alternative in the negative is implied. Here, however, the phrase in question conveys the meaning which attaches to the words just as they stand, and there is absolutely nothing in the context which warrants the conclusion that the words "or not assembled" must be implied to make sense. Indeed, that the words "or not assembled" can not be implied becomes fairly evident when it is considered that unassembled razors, finished, would be an anomaly. I think, therefore, that unassembled razors are excluded from the enacting clause, and that they were so excluded because it was the intention to cover them by the language of the proviso.

The words in the proviso "foregoing knives, razors, or erasers" can not be held to mean assembled knives, razors, or erasers, for the reason that the proviso would then become mere surplusage, in view of the fact that parts of assembled razors are dutiable under the enacting clause, not as parts, but as assembled razors. The same result would follow even if the enacting clause could be construed to embrace unassembled razors, because parts of unassembled razors would then be provided for in that clause as unassembled razors. The words "all the foregoing" must therefore be held to relate to knives, razors, and erasers, and not to assembled knives, razors, or erasers.

The next question to be determined is, What is the scope of the proviso? Is it confined to those articles which at the time of importation are actually parts of razors, or is it broad enough to include things which at the time of importation are not parts of razors, but are razor parts intended to be made up into razors in this country by uniting them to complementary parts of domestic manufacture? I incline to the former interpretation, for the reason that the proviso requires that the parts of razors provided for shall bear the rate of duty imposed upon the knives and razors *of which they are parts.*

The razor blades in controversy were imported, as shown by the evidence, to be made up into razors in this country by adding to them domestic materials, and consequently they could not be considered parts of any razor at the time it became the duty of the collector to classify and assess them for duty. Under the actual terms of the proviso the duty to be assessed on parts of razors is that imposed on the razors *of which they are parts*, and as at the time of importation of the merchandise there were no razors of which the blades were parts it follows that the goods are not dutiable under the proviso. If it were held that the value of the razor after manufacture in this country should be taken as the basis of duty, it would result that duty would be assessed on the valuation of a domestic razor and not on the valuation which the statute very explicitly imports. Of course, if the phrase "razors * * * of which they are parts" could be construed as if it read "of the class of razors of which they are to be parts" the proviso might be held applicable to the goods in controversy, but where is the justification for concluding that Congress intended that the phrase should be so read? I find none either in the paragraph itself or in its legislative history, and to so construe the proviso as to make it applicable to the importation would, in my opinion, simply amount to judicial legislation. It may be that in drafting the proviso there was a legislative lapse, but there is nothing tangible which would justify us in reaching that conclusion. Indeed, for aught we know, it may be that Congress intended to favor the importation of parts of razors designed to be manufactured into razors by the addition of American materials.

I do not believe that the proviso is confined to parts of razors which are imported with their complements in the same shipment, as decided by the board. Indeed, I am of opinion that the language of the proviso is broad enough to cover parts of razors whether the complementary parts come in the same or in a different shipment. Had Congress provided in terms for unassembled razors or for parts of unassembled razors there might be some excuse for holding that such a provision required the contemporaneous importation of the several parts which were committed one to the other for the manufacture of

a particular class of razors. See United States *v.* Schoverling (146 U. S., 76); Isaacs *v.* Jonas, *supra.* But Congress did not so provide, and I can find no reason for limiting the proviso to such parts of razors as are imported at the same time with their complements.

It is my opinion, therefore, that the decision of the Board of General Appraisers should be affirmed.