(C. D. 209)

BREWER SEWING SUPPLIES CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 11, 1939)

*Curtis E. Loehle* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of parts of sewing machines. Duty was levied thereon at the rate of 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts for sewing machines valued at more than $75 each. It is claimed that said articles are properly dutiable at the rate of 15 per centum ad valorem under said paragraph as parts for sewing machines valued at not more than $75 each.

The plaintiff offered in evidence the testimony of a single witness, O. K. Smith, a member of the plaintiff partnership. No evidence was offered by the Government.

The witness testified that his firm was engaged in the purchase and sale of parts of sewing machines; that he was familiar with the particular sewing-machine parts covered by the instant importation; that the articles represented by invoice item, 100 bobbin cases No. 15277, were made solely for Singer class 15/30 machine; that such a machine may be valued at over or under $75 each depending upon the woodwork used; that he could not recall for what particular machine the second invoice item, 25 bobbin cases No. 52472, was intended; that the third invoice item, 35 needle bar cams No. 8222, was intended for Singer class 27/4 machine, the price of which was under $75 each; that the next invoice item, 25 hooks No. 2515, was used on Singer class 15/30 machines, the value of which was under or over $75, depending on the woodwork used; that he had no idea of the value of the machine on which the articles represented by invoice item, 50 bobbin cases No. 6427, were used; that the articles represented by invoice item, 6 bobbin cases No. 32590, were intended for Singer class 66 machine, the value of which was over or under $75, depending upon the woodwork used; that the same was true of the articles represented by items 50–66K No. 32628; that the articles represented by invoice item 50–29K No. 69a were made for Singer class 29 shoe-patching machines, the value of which was $93, less 35 per centum, which would make it under $75; that he had no in-

formation regarding the foreign or export value of sewing machines made in Germany at the time the merchandise covered by the within protest was exported; and that he had no information regarding the United States value or the cost of production of the same.

Upon cross-examination the witness testified in part as follows:

X Q. Now, you say you have personally taken parts—I think you said bobbin cases?—A. Right.

X Q. ——for Singer 15/30 and installed them yourself?—A. Yes.

X Q. Put them in? Parts from this particular importation?—A. I can't tell whether it is from that, but importations from Germany.

X Q. I am talking about this particular importation.—A. I can't tell about this importation.

X Q. Did you bring any records to show the types of machines, or kind of machines, or value of machines that these parts went into?—A. I have that; I carry that in my mind.

*      *      *      *      *      *      *

X Q. Can you tell the court whether or not you took any of the bobbin cases involved in this case and put them into Singer 15/30 machines, these bobbins or bobbin cases?—A. I wouldn't make any statement about those to anyone.

X Q. So you don't know whether they went into or were put into machines valued over or under $75?—A. Not definitely.

*      *      *      *      *      *      *

X Q. Now, there are different bobbin cases, numbered 52472?—A. 52473; that is one I said I didn't recall; that is No. 2.

*      *      *      *      *      *      *

X Q. Now these needle bar cams, No. 8222—you say those are for a Singer 27/4 or the Free make of sewing machine; is that correct?—A. Right.

X Q. And you were quite definite in saying that on those machines the prices were low and the wholesale value, new, was always under $75?—A. To the best of my knowledge.

*      *      *      *      *      *      *

X Q. Have you ever seen Singer 27/4 or the Free make of sewing machine with a woodwork which made the wholesale value over $75?—A. No, I haven't.

X Q. You don't know how much, whether there are any or not?—A. I can't make a specific statement.

X Q. The next item you testified to was the hooks, No. 2515. You said that they are not usable—that they are usable on the 15/30 Singer; is that correct?—A. Correct.

X Q. And that also depends upon the woodwork, whether the value is over or under $75?—A. Right.

X Q. Then the next part you referred to were the bobbin cases, No. 6427. Am I correct in saying that you said that you have no idea of the value of those machines because it was 20 or 40 years old?—A. Correct.

X Q. And then the next item was the bobbin cases, No. 32590. You said they depended upon the woodwork, and they can be used, or could be, on a Singer Class 66?—A. Right.

X Q. So you are not in a position to say whether or not they were used or put in on a machine valued over or under $75?—A. Could I elaborate? These parts that I can sell are never put in new machines, because a manufacturer makes new parts. These are replacements for old machines. I know the value of the old machines and none were $75 in which the bobbin cases were put.

X Q. What is the value of those old machines when new?—A. Depending upon the woodwork.

X Q. Now, the next item was the 66K No. 32628. You said there again for a Singer 66, it depends upon the woodwork?—A. Right.

X Q. And the last item was the No. 69K. That was for the Singer No. 29 shoe machine?—A. Right.

\*      \*      \*      \*      \*      \*      \*

X Q. Do you know whether or not the last item, the 69K, was put into the Singer 29 shoe machine?—A. No, I know it wouldn't go into any other machine.

X Q. Did you ever see German machines?—A. Yes, but they are not the same.

X Q. And this particular part couldn't go into another machine?—A. No.

X Q. Is it made by the Singer people?—A. Not in Germany.

X Q. You don't know whether any machines in Germany are offered for sale for export from Germany to which this part could be usable or adaptable?—A. If it were, it would be a Singer machine.

X Q. A Singer machine from Germany?—A. Made by the Singer Manufacturing Company.

\*      \*      \*      \*      \*      \*      \*

X Q. Now, the 32590, you didn't put that into a machine yourself?—A. No.

\*      \*      \*      \*      \*      \*      \*

X Q. Isn't it possible that they may be adaptable for a German machine?—A. No, sir.

\*      \*      \*      \*      \*      \*      \*

X Q. You don't know whether or not after you import these parts and sell the parts—where they go, do you, except where you personally put them; is that correct?—A. I can't imagine a man buying these parts for ornaments, and that is what they are used for.

X Q. But you don't know what machine they do go in unless you put them in yourself?—A. I know they can go into no other machines, and dealers wouldn't have them on their shelves for nothing.

\*      \*      \*      \*      \*      \*      \*

X Q. You don't know whether or not all the prices you mentioned are the prices for new machines, freely offered for sale in the ordinary course of trade and in the usual wholesale quantities? \* \* \*—A. Well, I have seen about two German machines since I have been in business. I have covered every State in the Union, and I have never seen a German machine use a part I imported.

X Q. I didn't say that. You testified there are Singer machines sold from Germany to the United States.—A. No, I didn't.

## On redirect examination he testified as follows:

R. Q. You were asked in some detail whether or not you personally had seen an item described as bobbin cases, No. 15277, from this particular importation, used in a particular place, and it is my recollection you stated you could not tell whether it came out of this particular importation. I now ask you, is bobbin case No. 15277 in any importation ever different than bobbin case No. 15277 in any other case?—A. Absolutely the same.

R. Q. And is that true of all the items on this invoice?—A. Exactly.

On this record we are convinced that the plaintiff has not sustained the burden resting upon it of proving that the sewing machines of which the imported articles are alleged to be parts are valued at not more than $75 each, except in the case of the items described on the

invoice as "35 needle bar cams No. 8222" and as "50–29K No. 69a," in both of which the plaintiff has established *prima facie* that the value of the machines was less than $75 each.

In regard to the proper classification of the articles at bar, counsel for the Government, in his brief filed herein, raises the interesting question as to whether, inasmuch as the only sewing machines for which the imported parts are intended to be parts are domestic sewing machines, that therefore paragraph 372 has no application, for the reason that the language of that paragraph must refer only to imported foreign machines.

If it should be held that under the circumstances paragraph 372 does not apply, then the articles must be relegated for tariff classification to the catch-all provision in paragraph 397 of the Tariff Act of 1930 for manufactures of metal not specially provided for, and as such would be dutiable at the rate of 45 per centum ad valorem, in which case we should be obliged to hold that since that claim is not made in the protest the collector's classification, although erroneous, must nevertheless stand.

A similar question arose in the analogous case of *Ewald Krusius* v. *United States*, T. D. 35897, G. A. 7815, 29 Treas. Dec. 534. There the question presented involved the dutiable classification of certain razor blades imported unaccompanied by the remaining parts necessary to make complete razors. Duty was levied on the razor blades at the rate of 55 per centum ad valorem as parts of razors valued at more than $1 per dozen under the following provisions of paragraph 128 of the Tariff Act of 1913:

PAR. 128. Penknives, pocketknives, * * * erasers, * * * and razors, all the foregoing, whether assembled but not fully finished or finished; valued at not more than $1 per dozen, 35 per centum ad valorem; valued at more than $1 per dozen, 55 per centum ad valorem: *Provided*, That blades, handles, or other parts of any of the foregoing knives, razors, or erasers shall be dutiable at not less than the rate herein imposed upon the knives, razors, and erasers, of which they are parts. * * *

In holding that said paragraph 128 did not apply to the razor blades there in question, but that the latter were dutiable at the rate of 20 per centum ad valorem under paragraph 167 of said act as manufactures of metal not specially provided for, this court, then the Board of General Appraisers, said:

As a general proposition it is now well settled that, in the interpretation of the terms of a proviso, care should be exercised that the construction adopted should harmonize with the provisions of the enacting clause, at least to the extent of avoiding incongruous and absurd results. In accordance with that cardinal principle of tariff construction we must here endeavor to determine just what Congress intended to include within the terms of said proviso, the effect and scope of which are made wholly dependent upon the meaning to be given to the provisions of the enacting portion of the paragraph.

In our view of the law, the latter provisions plainly manifest the congressional intention to impose duties on certain classes of knives and erasers, and upon all razors, "whether assembled but not fully finished or finished," and that the proviso to said provision is intended to cover precisely the same class of merchandise where it is imported in parts unassembled. Parts of razors, therefore, are clearly dutiable under said proviso at the same rate imposed by the enacting clause on razors, but only when such parts represent the full complement of razors, and not otherwise. Single blades or handles imported in separate shipments could scarcely be classified under this proviso and held dutiable thereunder at the same rate as the razors "of which they are parts" when the plain fact is that they do not constitute a part of any other specific item of merchandise in the same importation, much less of a particular kind of razor valued at more than $1 per dozen.

As a matter of fact, in the case of protest 778140 the proof shows that, not only are the particular blades in the shipment unaccompanied by any handles whatever, but that such blades were brought over for the sole purpose of being attached to handles of domestic manufacture. It will, therefore, be seen that, inasmuch as the rate of duty applicable to the blades, handles, or other parts of razors is made wholly dependent upon the value of the completed razor of which they are parts, classification under said proviso of single razor blades, based upon the probable value of the razors of which they will ultimately form parts, must necessarily be the result of a highly speculative conjecture on the part of classifying officers.    *    *    *

We cannot believe that it was the intention of the lawmakers that classifying officers should be obliged to resort to any such haphazard and indefinite method of procedure in order to definitely arrive at the correct dutiable classification of any article of imported merchandise, *especially when it is borne in mind that tariff laws are intended to be operative only against goods, wares, and merchandise imported into the United States from foreign countries, and that the duties imposed thereunder attach to said merchandise in the precise condition in which it is imported.* [Italics ours.]

The above-cited case was decided in 1915. In the following year this court, in the case of *Alexis Witte Cutlery Co.* v. *United States,* Abstract 39313, 30 Treas. Dec. 366, followed the cited case and held certain razor blades not to be classifiable under said paragraph 128 of the Tariff Act of 1913, but to be properly dutiable at the rate of 20 per centum ad valorem under said paragraph 167 as manufactures of metal not specially provided for. Upon appeal, however, the decision of this court was reversed by the Court of Customs Appeals in the case of *United States* v. *Witte Cutlery Co.,* 7 Ct. Cust. Appls. 181, T. D. 36504. After stressing the fact that the imported blades were to be united to handles and rivets of domestic manufacture, the court proceeded to construe the language of the above provisions in said paragraph 128, and said:

The decision of the board in this case and the contention of the importer finally reduce themselves to the single proposition that the proviso to paragraph 128 covers parts of unassembled razors and is not applicable to any of such parts unless they be imported with the complementary parts necessary to constitute the entireties known as razors.

We find nothing in the proviso which warrants the limitation put upon its operation by the board and contended for by the importers. The blades, handles, and other parts provided for are the blades, handles, and other parts of razors, and not the blades, handles, and other parts of assembled or unassembled razors. When it comes to imposing the rate of duty, however, it is true that the Congress does declare that blades, handles, and other parts of razors should bear a rate of duty not less than that imposed upon the razors "of which they are parts." The phrase, however, "of which they are parts" does not necessarily imply that the blades, handles, etc., must be actual parts of assembled razors or unassembled razors rather than of razors of which they are destined to become parts.

Technically the language of the proviso "blades, handles, or other parts of any of the *foregoing*, knives, razors," etc., would mean the parts of razors already assembled. But obviously this is not the sense in which the reference to "any of the foregoing knives, razors," etc., was employed. The reference to "any of the foregoing knives, razors," etc., is to be held to be a reference to these terms generically, and refers to razors, knives, etc., of the class described in the enacting portion of the paragraph. This is essential in order to give force and effect to the proviso, and in this sense would include parts, though parts of unassembled razors.

This latest decision of the appellate court would seem to dispose of the contention raised in the Government's brief.

Upon the established facts and the law applicable thereto as hereinbefore stated, we hold that the articles constituting the imported merchandise at bar were properly classified by the collector as dutiable at the rate of 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts for sewing machines valued at more than $75 each, except the articles covered by invoice "35 Needle bar cams No. 8222" and "50–29K No. 69a" which the record establishes *prima facie* were parts intended for sewing machines valued at not more than $75 each. As to said articles covered by the last two quoted invoice items the claim of the plaintiff is sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.