## PARK & TILFORD v. UNITED STATES (No. 21).[1]

BOTTLES OF BLOWN OR MOLDED GLASS WITH CUT-GLASS STOPPERS—ENTIRETIES.

Bottles, made of glass, plain, blown, or molded, designed to be subsequently fitted with cut-glass stoppers, are not dutiable as articles apart from the glass stoppers imported with them; the bottles and the cut-glass stoppers were dutiable as entireties as cut-glass bottles under paragraph 100, tariff act of 1897.

### United States Court of Customs Appeals, October 18, 1910.

TRANSFERRED from the United States Circuit Court, Southern District of New York, G. A. 6794 (T. D. 29192).

[Affirmed.]

B. A. Levett for appellants.

D. Frank Lloyd, Assistant Attorney General, for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

This is an appeal by the importer from the United States Circuit Court for the Southern District of New York affirming the judgment of the Board of General Appraisers.

The merchandise in question is glass bottles, the bodies of which are plain, blown, or molded glass, not cut or ground in any manner, except such grinding as is necessary for fitting the stoppers, which are of cut glass and of a value greater than the bodies of the bottles.

The bottles were filled with alcoholic perfumery and including the stoppers were all purchased in France from the same dealer and invoiced and imported together. They were generally packed in cartons or fancy boxes, each containing one or more bottles.

The perfumery is dutiable separately and no question arises concerning the same.

Although it is not entirely clear, the invoices may be construed to undertake to place separate values upon the bottles and the stoppers.

The appellants claim, the board found, and we assume that the bodies of the bottles and the stoppers before being fitted each to the other, as hereinafter described, were made in different countries.

As we understand the record and claims of counsel, the body of each bottle before being imported was ground to fit and receive a particular stopper and was fitted with it; that thereafter the two were kept together; that the bottle after being filled was closed with the stopper; that generally a fancy cap was put on, presumably coming down to the neck of the bottle, and in that condition the bottle and its contents were imported and were designed to be sold as an entirety.

One purpose in fitting and using these cut-glass stoppers is to prevent a leakage of the perfumery, and when the contents are volatile a perfect fit of the stopper in the neck of the bottle is necessary.

It appears from the record that in the manufacture of such bottles with cut-glass stoppers each bottle as first blown or molded has a thicker neck than one designed to be stoppered with cork; that this is for the sole purpose of permitting it to be ground to fit the stopper, and until the bottle is so ground a glass stopper will not fit it. After

---

[1] Reported in T. D. 31006 (19 Treas. Dec., 1056).

being ground a particular stopper would only fit one bottle, and if the bottle were destroyed the stopper would be of no use unless another bottle were ground to fit it.

The collector assessed the bottles and the stoppers as cut-glass bottles under paragraph 100 of the tariff act of July 24, 1897. The appellants insist that the stoppers only should be so assessed under that paragraph and that the bodies of the bottles, the bottles as they are referred to in the record, should be assessed as plain, blown, or molded glass bottles under paragraph 99 of the same act.

The question, therefore, as we view it, is really one of entirety. Does the fitting of the two parts of the bottle as stated constitute them one article, thereby making the result a cut-glass bottle as claimed by the Government, or should the body of the bottle and the stopper be treated as separate articles, the former as plain glass and the latter as cut glass, for tariff purposes?

The record discloses that sometimes the bodies of the bottles and the stoppers before being fitted to each other by grinding are treated as separate articles of commerce. Whether under such circumstances they may be so treated for tariff purposes is not before us, but when assembled and fitted each to the other as in this case, we think it is more consonant with common sense and reason to hold that the two parts become one whole, and, the stopper being cut glass and the component of chief value, that the bottle is cut glass within the meaning of paragraph 100. Both are of the same material, and to hold that, after they have been assembled as appears in this case, they are nevertheless separable, would be much like declaring that a wooden rake tooth, after it was inserted in the ordinary wooden hand rake, was not a part of the rake.

A somewhat analogous question was before the Supreme Court in United States *v.* Schoverling (146 U. S., 76).

There it appeared that an importation of 12 finished gunstocks with locks and mountings was made by one importer, with the understanding that another importer was to import a like number of finished gun barrels designed to be inserted in these gunstocks, with the mutual expectation that these stocks and barrels were to be put together after arriving in this country, and it was claimed by the Government that these gunstocks should, under the circumstances, be assessed for duty as guns.

The court refused to sustain this contention and in substance held that the gunstocks should be assessed under a paragraph of the tariff which did not relate to guns.

In Isaacs *v.* Jonas (148 U. S., 648) the Supreme Court held that the importation, consisting of cigarette papers in packages of separate pieces, designed and suitable for cigarette wrappers, and of a proper size, together with pasteboard covers of corresponding size designed to be used with the paper to make cigarette books, was an entirety as a smoker's article, and in referring to the Schoverling case said, in substance, that no intimation was made therein that if the stocks and barrels had both been imported by the same person at the same

time, with the intention of putting them together as guns, they would not have been dutiable as such.

The following cases, which we think unnecessary to discuss, may be referred to as sustaining the conclusion which we reach: United States v. Leigh (159 Fed. Rep., 314, T. D. 27760); United States v. Auto Import Co. (168 Fed. Rep., 242, T. D. 28044); United States v. Mathews (78 Fed. Rep., 345); Wanamaker v. Cooper (69 Fed. Rep., 465).

The appellants further contend that the articles are not cut bottles under the trade understanding at the time the law was enacted.

It may be doubted if this is a case that from any standpoint permits or requires the application of the doctrine of a trade or commercial designation.

Assuming, however, that the case involves this question, we do not think, when the testimony of the witnesses, upon parts of which the appellant's counsel relies to support the contention, is considered as a whole, it shows that at and prior to July 24, 1897, or at any other time, there was or has been any definite, uniform, and general trade designation of cut-glass bottles which excludes such as are before us and warrants or requires us to hold that bottles made and used as appears in this case are not cut-glass bottles within the meaning of said paragraph 100.

The judgment of the circuit court and of the Board of General Appraisers is *affirmed.*