(C. D. 160)

SELSI CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 11, 1939)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General- (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of (1) plain aneroid barometers; (2) so-called insert aneroid barometers having complete thermometers separately mounted on the cases thereof; and (3) so-called combination weather sets composed of an aneroid barometer, a hygrometer, and a spirit thermometer, all mounted on a wooden frame or panel board on a wooden base.

All of said articles were assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as entireties as manufactures of metal not specially provided for. It is claimed that they are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines or parts thereof not specially provided for.

A motion to amend was granted which added to the protest the following claims:

Claiming further that if said barometers and/or said weather-sets are not dutiable as entireties, at 27½% under par. 372, tariff act of 1930, then they are alternatively claimed to be dutiable as follows:

(1). Barometers which have a complete thermometer separately mounted on the cases of the barometers:

(a) The complete barometers, and the cases therefor, are separately dutiable at 27½% under said par. 372; and

(b) The complete thermometers are separately dutiable at 45%, as assessed.

(2). Barometers (weather-sets) which consist of one complete barometer, one complete hygrometer, and one complete thermometer, all mounted either on a wooden baseboard, or on a wooden plaque:

(a) The complete barometers are separately dutiable at 27½% under said par. 372;

(b) The complete hygrometers are separately dutiable at 27½% under said par. 372;

(c) The wooden baseboards and plaques are dutiable at 27½% under said par. 372, as parts of said barometers and hygrometers, or, in the alternative, they are separately dutiable at 33⅓% under par. 412, of said act; and

(d) The complete thermometers are separately dutiable at 45%, as assessed.

The plaintiff offered the testimony of Germain Epstein, whose qualifications were conceded by counsel for the Government. The Government called no witness. Also in evidence are the following exhibits:

*Exhibit 1.* A stipulation wherein counsel for the respective parties agreed that the articles represented by invoice items marked "A" and checked by "L. C. B.," and upon which duty was levied at the rate of 45 per centum ad valorem under said paragraph 397, are similar in all material respects to the aneroid barometers held to be machines not specially provided for, and as such properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372, in the case of *United States* v. *L. Oppelman, Inc.*, T. D. 49271, and that the record in that case may be incorporated herein.

*Exhibit 2.* A representative sample of the articles covered by invoice item 3409/2½. It consists of an arrow-shaped wooden frame having a rear top hook by which it is suspended from a wall. The upper part has embedded therein a red spirit thermometer, and the lower part an aneroid barometer. Except that it is larger and the wooden frame different in design, the same exhibit represents the articles covered by item 3465/4 and which are illustrated on page 6 of the catalog of Selsi Barometers in evidence as Illustrative Exhibit A.

*Exhibit 3.* A sample of the articles covered by invoice item 3483/2½. It consists of a wooden stand on which are mounted an aneroid barometer and a hygrometer, and between them a red spirit thermometer. Except that it is slightly larger and the wooden frame different in

design, the said exhibit also represents the articles covered by invoice item 3484/3¼ and illustrated on page 7 of Illustrative Exhibit A.

*Exhibit 4.* A sample of the articles covered by invoice item 3485/2½. It is similar to Exhibit 3, except that the barometer, hygrometer, and thermometer are mounted on and embedded in an octagonal-shaped wooden base. Also similar thereto in all material respects are the articles represented by invoice item 3487/3¼ and illustrated on page 7 of Illustrative Exhibit A, except that said articles are slightly larger and the wooden base different in design.

It was stipulated between counsel that the witness would testify that the mechanisms of the aneroid barometers in Exhibits 2 and 3 operate in the same manner as did those in the barometers involved in the above-cited and incorporated case.

The witness then testified that the regular Fahrenheit thermometer fastened to the upper part of Exhibit 2 in no way affects the operation of the aneroid barometer embedded in the lower part of said exhibit; that, exclusive of its wooden frame mounting, the barometer is known as an insert barometer and is suitable for mounting in a wooden frame; that when it is used it is always so mounted, the frame being provided with an opening of the proper size to receive the barometer which is fastened to the frame with screws or nails; that an insert barometer, considered separate and apart from its wooden frame, is not provided with a ring by which it may be hung, or lugs or other supports to keep it in position while in use; that he had never seen an insert barometer used without a frame or mounting of some kind; that some insert barometers are mounted on plain wooden frames of various shapes and designs and others have thermometers embedded in the frames; that he buys and sells articles like Exhibit 2 in wholesale quantities as "barometers" or as "aneroid barometers"; that Exhibit 2 is designated as a "Selsi English Forecaster Pendant Barometer" on page 6 of Illustrative Exhibit A; that "pendant" refers to a special long shape suitable to be hung on a wall, and that under that name he has sold articles like Exhibit 2 during the past thirty years; that buyers order them as barometers; that he always buys them as complete entities in the same condition as Exhibit 2 and they are so sold; that such articles are never broken down and the parts sold separately; that they are used to forecast the weather, and the thermometer to ascertain the temperature; that the barometer and thermometer were entirely separate, distinct, and independent articles, the operation of one in no way affecting the functioning of the other; and that all of his testimony relative to Exhibit 2 is equally applicable to the articles represented by invoice item 3465/4.

The witness further testified that Exhibit 3 consists of an insert barometer, a red spirit thermometer, and a coil hygrometer; that the barometer is identical with that in Exhibit 2; that his testimony

relative to the frame or mounting in Exhibit 2 is equally applicable to the frame or mounting in Exhibit 3; that said hygrometer indicates the percentage of moisture in the air; that there are different kinds, such as coil hygrometers, hair hygrometers, etc., operated by different means; and that the hygrometer in Exhibit 3 is a coil hygrometer.

The witness then produced a separate coil hygrometer, which was admitted in evidence as Illustrative Exhibit B, and proceeded in open court to take apart the mechanism which he stated was identical in operation with that contained in Illustrative Exhibit 3. He testified that it was equipped with a metal coil lined with fiber, one end being fastened to a fixed post in the back of the dial, the other to a movable pinion which extends through a hole in the dial and to which is attached a hand on the face of the dial; that the presence of moisture in the air is detected by the fiber, which, when it absorbs the moisture, causes the metal coil to expand and the movable pinion to rotate and the hand to move and thus to indicate the presence of the humidity in the air; that the operation is entirely automatic; and that this particular type of hygrometer contains moving parts without which it could not perform its functions.

The witness further testified that the thermometer in Exhibit 3 is a regular liquid Fahrenheit thermometer used to ascertain the temperature; that its operation in no way affects the functioning of the barometer or hygrometer, each of the three named devices being completely distinct and independent of the others in its operation; that the wooden mounting in Exhibit 3 is a regular mounting necessary for the use of the barometer and hygrometer, each fitting the particular hole made therefor in the mounting to which each is fastened by screws or nails; that the barometer or hygrometer would not be a complete article without the frame or mounting; that when he buys an article like Exhibit 3 at wholesale it is offered to him as a complete entity and that it is sold as a complete unit and is never broken down for the purpose of selling the component parts separately; that he purchases articles like Exhibit 3 under the name of "combination barometers" and as "weather sets"; that he has been so buying and selling them at wholesale throughout the United States for the past thirty years; and that all of his testimony herein relative to Exhibit 3 applies with equal force to Exhibit 4 and to the articles represented by invoice items 3484 and 3487.

At the close of the direct testimony there was marked in evidence as Exhibit 5 a list showing the respective invoice unit values of the barometers, hygrometers, and thermometers and of the wooden frames thereof.

On cross-examination the witness testified that it is the moisture of the air which causes the hygrometer to operate; that the human breath would cause the coil to expand and the mechanism to operate; that all

of the articles represented by Exhibits 2, 3, and 4 were imported in their mounted condition; that the witness never imported any of the separate instruments and then mounted them in frames or other mountings in this country; that he had sometimes sold unmounted barometers to customers who mounted them; and that the barometers, hygrometers, and thermometers will function by way of recording whether mounted or unmounted.

On redirect examination he testified that he saw the insert barometers at the time they were imported, and that the holes for the screws or nails which fasten them to the frames were there at that time; that he has never seen an insert barometer used for the purpose of recording air pressure unless it was mounted in a frame of some kind; that when he testified that an insert barometer would function as such if you removed it from its frame he merely meant that the movement would operate and perform its function: that when he testified that such barometer would function for the purpose for which it was intended if removed from its frame he meant that the mechanism would continue to function; that an insert barometer when removed from its frame is not a complete barometer; that no unmounted insert barometers are shown in his company's catalog; that when insert barometers are sold to the ultimate consumer or user they are always sold mounted in a frame or mounting of some kind and never unmounted, if so imported; and that when insert barometers are sold without a frame or mounting they are always sold as raw material to wholesalers or manufacturers of barometers.

Upon this record we find the following facts:

1. That all of the barometers, hygrometers, and thermometers covered by this suit are separate and distinct articles, each performing its own particular function in and by itself without being in the remotest sense dependent upon or in any way related to or connected with either or both of the other articles, and that in each instance the wooden case or frame and base is an integral part of the article.

2. That both the barometers and hygrometers are mechanical contrivances which utilize, apply, or modify energy or force for the transmission of motion.

On the established facts it follows as a matter of law, and we so hold, that the collector erred in classifying the barometers with thermometers attached to the case, and the so-called combination weather sets as entireties, instead of classifying each of said articles as a separate and distinct tariff entity.

The principle of customs law is well settled that to constitute an entirety for tariff purposes a combination of two or more articles must be so joined together or merged that the whole creates a new and different article with a new name and use. See *Isaacs* v. *Jonas*, 148 U. S.

648; *United States* v. *Auto Import Co.*, 168 Fed. 242; *Park & Tilford* v. *United States*, 1 Ct. Cust. Appls. 34, T. D. 31006; *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499; *Jackson Co.* v. *United States*, 2 Ct. Cust. Appls. 475, T. D. 32227; *United States* v. *Haaker*, 4 Ct. Cust. Appls. 508, T. D. 33935; *Altman* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Salemi & Sons* v. *United States*, 19 C. C. P. A. 43, T. D. 44892; *United States* v. *Miyaka*, 22 C. C. P. A. 38, T. D. 47039; *Yardley* v. *United States*, 22 C. C. P. A. 390, T. D. 47400; *United States* v. *Woolworth*, 23 C. C. P. A. 365, T. D. 48212; *Brach* v. *United States*, Abstract 26145, and *Piver* v. *United States*, T. D. 47357.

Where articles (other than those *eo nomine* provided for) designed to be used together are separate, distinct, and complete in themselves, they are not to be regarded as entireties for tariff purposes, because they do not merge so as to form a new or distinct article of commerce having a different character and use, or because neither becomes essential to the completeness of the other, or bears a natural affinity or relation one to the other. See *Borgfeldt* v. *United States*, 11 Ct. Cust. Appls. 105, T. D. 38750; *United States* v. *Kalter*, id. 540, T. D. 39680; *Lord & Taylor* v. *United States* (G. A. 6942, T. D. 30140); *Cincinnati Artistic Wrought Iron Works* v. *United States*, T. D. 44354; *Vantine* v. *United States*, Abstract 34727 (T. D. 34165); *Coty Processing Co., Inc.* v. *United States*, 23 C. C. P. A. 117, T. D. 47768; and *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 22 C. C. P. A. 281, T. D. 47330.

As a general proposition, therefore, articles are not regarded by the courts as entireties for dutiable purposes when there is no natural affinity in composition, and particularly where one of the articles is complete in all of its parts without regard to the article imported to be used with it.

In *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085, the merchandise involved consisted of certain steam engines and certain fans or blowers, which were designed to be operated together for supplying a forced draft to the boilers of vessels. They were classified for duty as entireties at 20 per centum ad valorem under paragraph 167, Tariff Act of 1913. The steam engines were claimed to be separately dutiable at 15 per centum ad valorem under the *eo nomine* provision therefor in paragraph 165 of said act.

As imported the engines and fans were not connected together but when in use they were coupled together and served an auxiliary purpose in connection with the main boiler of the vessel. The power which rotated the fan was transmitted to it by means of the steam engine. Each engine was complete within itself as a steam engine and each fan was complete within itself as a blower fan. The court held:

* * * that the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are installed for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

In *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680, the merchandise in question consisted of certain rubber boots and leather straps. Each boot was designed and manufactured with the purpose of having attached thereto a leather strap by means of a rubber loop fastened to the sole of the boot, the purpose of the strap being to bind the boot to the foot and ankle of the wearer. They were classified for duty as entireties at 30 per centum ad valorem under paragraph 256, Tariff Act of 1913, and were claimed not to be entireties by the importer.

As imported the straps were not fastened to the boots, but after importation the boots were sold with the straps, and they were used together. The court held the merchandise not to be entireties, stating:

> We are of the opinion that even though it be considered that the boots and the straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt.

In *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 C. C. P. A. 367, T. D. 46132, the merchandise in question consisted of "women's leather handbag, fitted with mirror, purse, and strap watch." The small watch was attached at each of its ends to straps, which straps in turn were attached rather tightly to the sides of the bag. The collector classified the bag and watch as separate articles, and the importer claimed them to constitute an entirety.

As imported the merchandise was assembled as a unit, and after importation always sold as such, the watch never being removed from the bag and sold separately. The court in holding the bag and watch not to be entireties said:

> * * * There is no natural affinity or relation between a leather handbag and a watch. Neither is normally essential to the completeness of the other.
>
>     * ,      *      *      *      *      *
>
> Here we have three distinct entities, to wit, a bag or pocketbook, in chief value of leather; watch movements; and a watch case, for each of which *eo nomine* provision is made in separate paragraphs of the Tariff Act of 1930.
>
> The fact that they were assembled into a unit and so imported has not caused any part to lose its identity or its normal use.

In *United States* v. *Saks & Co., Inc.*, 21 C. C. P. A. 186, T. D. 46714, the merchandise in question, consisting of women's *leather* handbags, not jewelry, each having a watch set in one corner of the bag, on the outside, sold and used as an entirety, was held by the court not to be entireties upon the authority of *United States* v. *John Wanamaker*, 20 C. C. P. A. 367, T. D. 46132.

In *Van Cleef & Arpel, Inc.* v. *United States*, Abstract 16804, certain watch movements in vanity cases, classified as entireties at 80 per centum ad valorem under paragraph 1428, Tariff Act of 1922, were held not to be entireties and therefore separately dutiable, the vanity cases at 80 per centum ad valorem under paragraph 1428, and the watch movements at $2 each under paragraph 367 of said act.

In *R. J. Godwin's Sons, Inc.* v. *United States*, 22 C. C. P. A. 340, T. D. 47373, the merchandise in question consisted of certain pictures in chief value of paper lithographically printed, mounted on cardboard, imported in wooden frames and held in position by narrow strips of wood tacked to the frames. They were classified by the collector as entireties at 33⅓ per centum ad valorem under paragraph 412, Tariff Act of 1930, and were claimed by the importer not to be entireties.

In holding the merchandise not to be dutiable as entireties the court said:

\* \* \* We conclude, therefore, that the lithographic prints and the frames in which they are mounted are not dutiable as entireties; that the frames are dutiable as manufactures of wood as assessed by the collector; that the lithographic prints are dutiable at the appropriate rate provided in paragraph 1406; and that the mere fact that the values of the lithographic prints and the wooden frames were not separately "specified on the invoice" and in the entry does not affect their classification.

In *F. W. Woolworth Co.* v. *United States*, 26 C. C. P. A. 221, C. A. D. 20, certain merchandise, consisting of short, mechanical pencils attached by chain to small, silver-finished metal animal figures, was classified for duty by the collector as follows: The pencils under the *eo nomine* provision therefor in paragraph 1550 (c), Tariff Act of 1930, and the figures and chains under paragraph 397 of said act.

The question of entireties was not before the court, but the case may be cited in support of the proposition that when two or more articles are imported as a unit and such articles retain their identity and perform separate and distinct functions, and there is no natural affinity or relation between them, they are not regarded as entireties for tariff purposes.

In *Lord & Taylor* v. *United States*, T. D. 30140–G. A. 6942, articles consisting of celluloid cases containing perfumery bottles were held not to be considered as entireties though they were imported packed together, and were sold and used together. The court said:

\* \* \* The celluloid cases are complete articles in themselves, while the bottles are the ordinary perfumery bottles of commerce, selected with a view to the appropriate size. The articles are individual and separate entities \* \* \*.

In *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, T. D. 39322, the merchandise in question consisted of the carcasses of calves with the skins on. They were classified by the collector as entireties, as veal, at 2 cents per pound under paragraph 14 of the Emergency Tariff Act of 1921. The importer claimed the skins to be segregable tariff entities and as such entitled to free entry under paragraph 604, Tariff Act of 1913.

In holding the merchandise not to be dutiable as entireties the court said:

\* \* \* we think that the question herein submitted finds its answer in the established rule that where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto. In the present case, therefore, the veal of the carcasses should have been assessed with duty as such at the rate of 2 cents per pound, while the skins should have been admitted free of duty.

In *A. Traeger* v. *United States*, Abstract 40680, 32 Treas. Dec. 768, the merchandise in question consisted of certain cameras, microscopes, and other parts, imported together, and was classified by the collector as entireties as microscopes under paragraph 94, Tariff Act of 1913. The cameras were claimed to be separately dutiable as such. It was shown that the camera was sometimes used with the microscope, and also that they were separable, and could be used independently of each other—the camera and microscope being two separate articles. In its entirety the articles were designated as a microphotographic outfit.

The court held the merchandise should not have been classified as an entirety, saying:

\* \* \* Although the complete entirety of camera, microscope, and parts is designated as a micro-photographic outfit, yet the microscope and camera are invoiced separately, priced separately, are used separately at times, and at times are sold separately.

In *A. W. Fenton Co.* v. *United States*, Abstract 49970, 48 Treas. Dec. 650, the merchandise in question consisted of certain shoes with skates riveted thereto classified as entireties by the collector at 40 per centum ad valorem under paragraph 399, Tariff Act of 1922. The importer claimed the merchandise was not properly classifiable as entireties, and the court so held. The shoes were held free of duty under paragraph 1607, and the skates dutiable under paragraph 1402, as claimed.

In harmony with the law as judicially enunciated in the above-cited decisions it follows that the barometers with thermometers

attached to the cases thereof and the so-called weather sets here imported are not entireties as classified by the collector. They are composed of articles which are separately dutiable as follows: All the barometers and hygrometers and their respective cases, frames, or mountings are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines not specially provided for, as alleged by the plaintiff. *United States* v. *L. Oppleman, Inc., supra,* and *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust Appls. 273, T. D. 37537. The thermometers not being elsewhere more specifically provided for, are properly classifiable as manufactures of metal not specially provided for and as such dutiable under said paragraph 397 at the rate of 45 per centum ad valorem, as classified by the collector, based upon the following values (English currency) which are in evidence herein:

| Invoice item | Value thermometer S D |
| --- | --- |
| 3409/2½″ | 1/4 |
| 3465/4″ | 1/6 |
| 3483/2½″ | 1/– |
| 3484/3¼″ | 1/4 |
| 3485/2½″ | 1/– |
| 3487/3¼″ | 1/6 |

The above claim alleged under said paragraph 372 is therefore sustained as to all the barometers and hygrometers in the importation; but as to all other merchandise, including the thermometers, the claims are overruled. Judgment will be rendered accordingly.