(C. D. 1393)

LEON MARKS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 28, 1952)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This action involves the classification of certain earthenware teapots and coffeepots which are encased in a metal felt-lined cozy. The articles are in chief value of metal. The collector separated the units for duty purposes, assessing duty upon the earthenware teapots and coffeepots at the rate of 10 cents per dozen pieces and 45 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as plain white earthenware. Upon the metal felt-lined cozies covering the pots, the collector assessed duty at the rate of 15 per centum ad valorem as household utensils in chief value of brass, under paragraph 339 as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The plaintiff claims that the earthenware articles, together with the metal covers therefor, constitute an entirety and, as such, are dutiable as brass household utensils at the rate of 15 per centum as assessed by the collector only upon the brass covers.

At the trial the plaintiff testified that the teapots and coffeepots come in three sizes; the small, #408, the medium, #350, and the large, #8515. Teapot #408, illustrating #350 and #8515, the sizes imported herein, was admitted in evidence as illustrative exhibit A. Coffeepot #350, as illustrative of the larger size #8515 here in question, was admitted in evidence as illustrative exhibit B. Teapot #8515 was admitted in evidence on behalf of the defendant as illustrating the largest size teapot as illustrative exhibit C. There was also admitted in evidence on behalf of the defendant an ordinary earthenware teapot as illustrative exhibit D.

The witness further testified that the articles are always sold as complete entities, but that replacements of the metal or earthenware parts are kept in case either part is broken and replacements are needed. However, the witness stated that the articles are only sold as a single unit in retail establishments such as Hammacher Schlemmer & Co., Inc.; Lewis & Conger; and Alice H. Marks Shop. The pots are used for the purpose of keeping hot, for practically an hour, the beverage contained therein.

The witness further testified that he had been importing these particular pots for 2½ years, and that the covers are interchangeable for the same-sized pots. The witness was of the opinion that the covers would not fit other pots of the same size, not designed for such use.

Counsel for the Government demonstrated how the cover of illustrative exhibit C would fit over the ordinary teapot, illustrative exhibit D. It is very obvious from fitting these two articles together that neither was made nor intended to be used together. Furthermore, it is clearly demonstrated by such illustration that the metal cover was only intended to be used with the pot it was designed to fit. Although

the pot could be used without the cover, obviously the cover is useless without the pot. Illustrative exhibit C, which is the size of teapot here imported, has a metal cover with four small nobs attached at the bottom for legs. The bottom portion is a half globe and contains a felt lining. At either side there is a cut-out portion to enable the handle and the spout to protrude. The top part of the metal cozy has the cover of the teapot screwed to the cozy and such cover also holds the felt lining. It is hinged to the bottom portion on one side and has a latch at the other which hooks onto a nob for that purpose on the bottom portion, and at either side there is a cut-out portion for the handle and spout. When closed, these cut-out parts of the metal cover fit snugly around the spout and the handle. When containing an ordinary teapot, it is obvious that the purpose for which it is designed, to contain the heat, is entirely lost because of the looseness of the cover, particularly around the spout and the handle. It fits about as well as a man's overcoat upon a half-grown boy, and looks more incongruous.

The case of *Isaacs* v. *Jonas*, 148 U. S. 648, involved the importation of cigarette papers and pasteboard covers. The papers and the covers were imported together. The Supreme Court found that the leaves of paper were fit for nothing else but to be made into cigarettes and smoked with tobacco wrapped in them and that the covers were fit for nothing except to hold and protect the papers until made by the smoker into cigarettes and, therefore, the papers and the covers were held to be entireties.

In *United States* v. *Miyaka*, 22 C. C. P. A. 38, T. D. 47039, deflated globes, designed to be fastened to an aluminum, graduated, semicircumferential piece, and an aluminum tripod mounting, were, as entireties, assessed as articles in chief value of metal. It was claimed that they were separately dutiable. The court stated that it was quite obvious that the articles should be treated as entireties because each globe, with its complete mounting and instructions, is enclosed in a closed box, which is named thereon "Patent No. 75632, Collapsible Pocket Globe"; that each box is a sealed package, containing a collapsible globe, a frame and mounting, all parts necessary to fully complete the article, and instructions for fitting the parts together into a complete whole. As the articles were imported and were intended to be, and were, used together, the court held that under the doctrine of the most recent cases, the articles were entireties.

In *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. 51, T. D. 47050, a knocked-down machine for cutting sponge rubber cake was imported in four cases. It included a band saw with mountings, etc., together with the electric motors, one to furnish motive power for two small emery wheels which were in constant contact with the blades, and the other to furnish the motor power to the machine. As imported, bolt holes for the attachment of the two motors had been provided. The appellate court held that the grinding machine with

motor starter and the rubber-cutting machine with motor consisted of an electrical machine as an entirety.

The case of *United States* v. *Haaker*, 4 Ct. Cust. Appls. 508, T. D. 33935, involved a winged figure of a woman upon a pedestal made of a square shaft with a carved capital and base. It was held that as the pedestal was formed under the supervision of the designer of the figure with a view to the symmetrical appearance of the whole and was intended to support the figure, it was an entirety with the figure.

In the case of *Mrs. Eunice Essig Brach* v. *United States*, 64 Treas. Dec. 1103, Abstract 26145, an unset emerald and a form of bottle, composed of rock crystal with a hinged gold top, were classified as an entirety. There, the importer claimed the emerald was dutiable separately. The court held that when two or more parts of an article are shipped together and intended to be used together as one article, and by mere assembly they are made into one article, they are to be regarded as entireties.

In *Koeller-Struss Co.* v. *United States*, 59 Treas. Dec. 175, T. D. 44560, dice games, consisting of dice enclosed in a glass and metal container composed of a metal base in the center of which is a metal spring supporting a glass dome with a bottom composed of metal, cork, and a piece of green baize or felt, were held dutiable as entireties, the value of the dice being minor as compared with the value of the container. The glass dome was shown to be removable and the dice easily removed, but the court found that the stand would be useless without the dice.

In the case of *L. T. Piver, Inc.* v. *United States*, 66 Treas. Dec. 562, T. D. 47357, glass bottles and unattached metal caps were imported in the same shipment. The caps were designed for the exclusive use of the bottles and there were the same number of caps as bottles. The caps could be used on any bottles of the same size and type, and the caps remaining over could be used on bottles in another shipment. The bottles were sold filled with powder and were never sold without the cap being attached. The court stated that the bottle caps did not perform a separate function apart from the bottle. The bottle could not be used as a container for talcum powder or anything else without the cap. The court found a decided affinity between the bottle and the cap and that each is essential to the use and completeness of the other.

In *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232, there were involved certain untrimmed cotton corsets and lace trimmings, imported together but not attached to each other. They were designed to be attached to each other and there was no evidence that the lace trimmings could be used for any purpose other than as trimmings for corsets, although the lace trimmings were salable articles when separated from the corsets. The articles were held duti-

able as entireties, even though the parts might be the subject of commercial transactions and salable separately, and the court stated:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

In the case of *Kwong Yuen & Co.* v. *United States*, 73 Treas. Dec. 297, T. D. 49409, cited by the Government, there were certain ornamental chinaware, soapstone, jade, and other materials in the form of vases, bowls, trays, trees in pots, and figures of various kinds imported together with carved wooden stands made of teakwood. Although the stands were imported and intended to be used with the particular articles imported, they were interchangeable and, in addition, could be used by themselves without the vases, bowls, etc., with which they were imported. The ornamental articles also were of such construction that they could be placed directly upon a table or other object for support. The court stated: "There appears to be nothing in the construction of any of the bases that confines them to the use of holding the particular objects with which they are imported." The court also announced a principle applicable to entireties as follows:

\* \* \* it has been held that if the articles designed to be used together are separate, distinct, and complete in themselves, they are not regarded as entireties for dutiable purposes because they do not merge so as to form a new or distinct article of commerce having a different character or name, or because neither became essential to the completeness of the other, or there appeared to be no natural affinity or relation between the articles.

The *Kwong* case clearly is not applicable to the merchandise at issue in this case. There were two complete articles which were used in conjunction with each other in that case, but each in itself was an article of commerce and there was no natural affinity or relation between the articles. In the case before us, the cover is useless without the pot, and each is essential to the completeness of the other, both forming an "Everhot" teapot or an "Everhot" coffeepot, which is an English patented article #523942.

The case of *Forest Lawn Memorial Park* v. *United States*, 68 Treas. Dec. 1129, Abstract 32547, involved, among other things, pedestals and vases. It was found that the pedestals were not only interchangeable but were appropriate for use for articles other than the vases.

The case of *O. E. Barrant* v. *United States*, 11 Cust. Ct. 192, Abstract 48422, involved variously shaped dishes in carved cinnabar wood boxes. The chinaware dishes therein could be used in connection with the lower part of the box as a tray or as a separate entity, and

the box could be used for any purpose for which it was adaptable. The court stated that the dishes were still dishes, when placed in the box, and the boxes were still boxes and failed to create a new article having a new name and new use, although forming sweetmeat sets when used in connection with each other. This case is not an authority for holding the articles before us as separate entities for the reason that there are not two separate entities here involved. We have teapots with cozies. Without the cozies, we have teapots, but the metal covers which act as cozies are of no conceivable use when separated from the particular teapots for which they were designed.

For the reason that the articles in question formed a patented article, "Everhot" teapots or "Everhot" coffeepots, a new article with a new name and new use composed in chief value of metal, which was fit for no other purpose except to perform the function of keeping the teapots and coffeepots hot, and following the decisions cited, it is held that they are entireties. Counsel for both sides agreed that the component of chief value of the article is brass, not plated with platinum, gold, or silver. As entireties in chief value of metal, the articles are properly dutiable at the rate of 15 per centum ad valorem under paragraph 339, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the collector will reliquidate the entry and refund all duties taken in excess in accordance with law.