**PRESCOLITE MFGR. CORP., and Mattoon & Co.**

v.

**UNITED STATES.**

**C.D. 3005; Protest 64/9764–101881.**

United States Customs Court,
First Division.
May 16, 1967.

Glad & Tuttle, San Francisco, Cal. (George R. Tuttle, San Francisco, Cal., of counsel), for plaintiffs.

Barefoot Sanders, Asst. Atty. Gen. (Arthur H. Steinberg and S. William Barr, New York City, trial attorneys), for defendant.

Before OLIVER and WATSON, JJ., and WILSON, Senior Judge.

WILSON, Senior Judge:

The protest includes four separate entries of merchandise described on the invoices as wire retainers of types "O," "U," "V," and "K" for the same respective type glasses. These glasses are also referred to in the invoices as globes which are not involved in this protest. The invoices state: "Wire retainers packed one with each globe."

The collector of customs classified the glasses and wire retainers as entireties, as glass shades, and assessed duty thereon at 31½ per centum ad valorem under paragraph 218(c) of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3513 of December 28, 1962,

concerning agreements supplementary to the General Agreement on Tariffs and Trade, 98 Treas. Dec. 51, T.D. 55816 which reads so far as pertinent herein:

Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination:

\* \* \* \* \* \* \* \*

Globes and shades ........................31½% ad val.

\* \* \* \* \* \* \* \*

*Provided*, That parts not specially provided for, wholly or in chief value of glass, of any of the foregoing shall be subject to.

The same rate of duty as the articles of which they are parts.

———◆———

Prescolite Mfgr. Corp. is the actual importer. Mattoon & Co. is a customs broker. The protest claims that the wire retainers are properly dutiable at 15 per centum or 17½ per centum under paragraph 353, as modified, infra, or at 19 per centum under paragraph 397, as modified, infra. As plaintiffs did not urge the claim under paragraph 353 at 17½ per centum either at the trial or in their brief, that claim is deemed abandoned. The remaining claimed paragraphs are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy \* \* \*:

\* \* \* \* \* \* \* \*

Other articles \* \* \* .....................15% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part .............

The same rate of duty as the articles of which they are parts.

Paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \* ........................19% ad val.

Plaintiffs, at the trial and in their brief, claim relief only as to the wire retainers covered by the protest.

Defendant's brief, page 2, states:

It is defendant's position herein that the imported wire retainers and glasses constitute a complete article of commerce, to wit, a shade, in chief value of glass, and thus constitute an entirety for tariff purposes, properly classified as glass shades under paragraph 218(c), as modified.

The plaintiffs called William S. Smith as their sole witness and offered five exhibits in evidence. The defendant offered no evidence and did not cross-examine plaintiffs' witness.

Mr. Smith testified in substance that he is employed by Prescolite Manufacturing Corp.; that the firm primarily designs, manufactures, and sells lighting fixtures to electrical distributors on a national basis throughout continental United States; that he serves his company as a design engineer, a plant engineer, and a special project engineer. He studied electrical and illuminating engineering, attended seminars and courses in illuminating engineering, and had 10 years of practical experience with his firm. He is a member of the Illuminating Engineers Society and the International Association of Electrical Inspectors which is also tied in with the field of illuminating.

Mr. Smith stated that he is familiar with the items sold by his company as well as with the merchandise involved in the case at bar. He brought certain exhibits to court (R. 8, 9) and identified them.

Collective exhibit 1 consists of a glass globe and wire retainer, both type "O," and an instruction sheet. Collective exhibit 2 contains a glass globe and wire retainer, both type "V." These exhibits are representative of the type of merchandise under consideration (R. 9–11). Exhibits 1 and 2, when put together for practical use, are used in conjunction with illustrative exhibits 3, 4 and 5 (R. 26). Exhibit 3 depicts items which are representative of units which go along with and are used in conjunction with exhibits 1 and 2, and consists of a cord, a lamp holder, and a canopy, which is a large round item. Underneath is a suspension bar and hardware. On the top side of the cord is what is termed a strain relief. The back side of this exhibit is a standard electrical outlet box, typical of an electrical outlet box which could be in the ceiling installation (R. 13–15). Plaintiffs' counsel stated that illustrative exhibit 3 is produced in the United States and sold with exhibits 1 and 2, except that the metal box on the back and the wire which supports the box are supplied separately by the electrical installer (R. 15).

The witness further stated that exhibit 4 consists of a glass "U" type globe and a "U" type wire retainer as imported, to which the cord, socket, canopy, suspension bar and strain relief, and the hardware to suspend the unit, are added after importation at time of installation, the outlet box already being in the ceiling (R. 16). He also stated that exhibit 5 is the lamp holder socket with a piece of cord attached thereto. It also has a small metal back with an insulating ring on the inside of it which is called in the trade a strain relief, and prevents stress being applied to the electric contacts within the socket (R. 17). The socket is the same type as is attached to exhibits 3 and 4 but shows the interior portion (R. 18).

In answer to questions by the trial judge (now Senior Judge Charles D. Lawrence) the witness testified that exhibits 1 and 2 are made of glass and metal and that the glass portion cannot ordinarily be used without the metal portion; that "It would have to be an entirety" and "The glass as far as this company is concerned is used in conjunction with the wire retainer." This applies to both exhibits 1 and 2. The glass and the metal are sold together as a portion of the whole, with the cord, socket, canopy and the suspension means. The glass and wire retainer have no use without the cord, canopy, and socket (R. 18–20).

■ It is common knowledge in customs practice that a presumption of correctness attaches to the collector's classification, which includes the presumption that the collector found every fact to exist in accordance with his classification. Atlantic Aluminum & Metal Distributors, Inc. v. United States, 47 CCPA 88, C.A.D. 735, and cases cited therein. In the instant case, the collector's classification of the imported wire retainers and glasses is based upon his finding that those items together are glass shades and are an entirety in chief value of glass for use in connection with artificial illumination, as provided for in paragraph 218(c) and T.D. 55816, supra. It was, therefore, the burden of plaintiffs to establish that the wire retainers and glasses should be separately treated for tariff purposes; that the classification is erroneous and that its claimed classification is correct. Bob Stone Cordage Co. et al. v. United States, 51 CCPA 60, 65, C.A.D. 838.

The court will first consider the alternative claim and the cases cited by plaintiffs in support thereof. Plaintiffs argue (brief, page 5) that the glass globe and wire retainer do not form a commercial entity after importation merging into a new article with a new name, character or use; that they "retain their separate identities as parts of a lighting fixture assembled after importation with the addition of other parts," and are not "permanently affixed or attached to each other when imported or after importation."

In order to succeed under paragraph 353, supra, it was importers' burden to affirmatively establish that the wire retainers are parts of the lighting fixture under paragraph 353 and T.D. 51802, supra, which is wholly or in chief value of metal. There is no evidence to support such contention. It is noted, upon examination of exhibit 4 which is illustrative of the lighting fixture, that it consists of several materials of which glass apparently is in chief value. An examination of exhibits 1 and 2 likewise indicates that the component material of chief value is the glass portion. John S. Connor, Inc. v. United States, 54 Cust. Ct. 213, C.D. 2536.

■ Cases cited by plaintiffs in support of their position are inapplicable or distinguishable. In A. N. Khouri & Bro. v. United States, 22 CCPA 28, T.D. 47037, imported floor and base lamps in chief value of metal were classified under paragraph 397 of the Tariff Act of 1930. Plaintiff claimed under paragraph 353. The record established that the lamps were usable after being wired and equipped, after importation, with wires, switches, sockets, and bulbs for electrical lighting. The court stated it found no language indicative of a legislative intent to bring lamp bases, finished or unfinished, under said paragraph 353 as "parts"; that means through or over which electrical current merely passes were not intended to be included therein; that a mere showing that electric wires are put in the lamps and other appurtenances essential to ordinary electric lamp lighting placed therein would *not* serve to bring the lamps within the paragraph. The protest was overruled by this court (Abstract 24294) and affirmed by the appellate court. The same result with respect to paragraph 353 on a similiar record herein is deemed warranted.

In German American Import Co. v. United States, 63 Treas. Dec. 1130, T.D. 46488, also cited by plaintiffs, the merchandise consisted of Christmas-tree lighting sets *stipulated* to be in chief value of metal. They contained 16 incandescent lamps each installed in its separate socket, and the whole connected with the necessary wiring or cord at the end of which was a plug for connecting the set, which operated as a unit, with the electric current. The court held the merchandise dutiable under paragraph 353 for "articles suitable for * * * distributing electrical energy," rather than as manufactures of metal, not specially provided for, under paragraph 397. The protest in the present case concerns merchandise assessed under paragraph 218(c) as an entirety, and not

whether the importation is dutiable under paragraph 353 or 397. Furthermore the parties in the cited case stipulated that base metal constituted the component material of chief value. No such stipulation exists in this case.

In Guth Stern & Co., Inc. (New York) v. United States, 63 Treas. Dec. 1390, Abstract 23500, also cited by plaintiffs, the court held, based on a *stipulation,* that the merchandise was dutiable under paragraph 353 as claimed rather than under paragraph 397 as classified. The question of entireties was not involved.

■ The forgoing cases do not support importers' claim asserted in the case at bar. It is apparent from the cited cases that paragraph 353 does *not* include articles or parts which merely "utilize" electrical energy.

■ Plaintiffs' claim under paragraph 397 is not supported by any evidence which establishes that the imported wire retainer is wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum. While a visual examination of exhibits 1 and 2 reveals that they are composed in part of *some kind of metal,* its precise nature is not specifically of record. Without evidence as to chief value, importers have failed in their burden of proof, and the collector's classification for the glass globes and wire retainers as entireties in chief value of glass remains presumptively correct. See United States v. Milnor, Inc., 16 Ct.Cust.App. 472, 474, T.D. 43212, and cases cited therein.

Cases cited in plaintiffs' brief in opposition to the theory of entireties do not support plaintiffs' contentions. Plaintiffs cite the cases of Twin Pin Co. of U.S.A., Inc. v. United States, 24 Cust. Ct. 430, Abstract 54254; Trans Atlantic Company v. United States, 35 Cust.Ct. 1, C.D. 1712; Coty Processing Co., Inc. v. United States, 23 CCPA 117, T.D. 47768; United States v. Koons, Wilson & Co., 15 Ct.Cust.App. 352, T.D. 42512; and A. N. Khouri and Bro. v. United States, supra.

The foregoing cases cited by plaintiffs do not support their contention against classification herein as "entireties."

Defendant's counsel has cited cases in support of the instant classification of the glasses and wire retainers as "entireties" which the court considers are apropos and will be referred to, infra.

In Altman & Co. v. United States, 13 Ct.Cust.App. 315, 316, T.D. 41232, the merchandise consisted of corsets and lace trimmings which were assessed as entireties under paragraph 1430 of the Tariff Act of 1922. They are imported together in equal numbers with a label on each piece indicating a number and size which corresponded with one of the imported corsets. They were customarily sold attached to each other. The court stated:

It is manifest, from a consideration of these facts, that these goods were imported for the purpose of making therefrom a finished and completed article of commerce; that the *various parts were designed to be used together and not separately,* and that this was, in fact, the *actual major use* which was made of them by the importers. [Emphasis supplied.]

The court further stated the doctrine of entireties as follows, page 318:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, *a complete article of commerce,* and when it is further shown that the *importer intends to so use them,* these *parts will be considered for tariff purposes as entireties,* even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately. [Emphasis supplied.]

The oral evidence of record herein and the exhibits (potent witness, United States v. Halle Bros. Co., 20 CCPA 281, T.D. 46077) demonstrates that the glass

portion has no use without the wire retainer and cannot be used without the metal portion in both exhibits 1 and 2; that they are sold together as a unit as a portion of the whole illuminating fixture (R. 18, 19).

The case of Leon Marks v. United States, 28 Cust.Ct. 98, 103, C.D. 1393, involved earthenware teapots and coffeepots, each of which was encased in a metal felt-lined cozy which covered the pot. They were separately classified by the collector, and the plaintiff claimed them as an entirety. The record established that they were always sold as complete entities as a single unit in retail establishments. The court sustained, the protest, stating:

> * * * We have teapots with cozies. Without the cozies, we have teapots, *but the metal covers which act as cozies are of no conceivable use when separated from the particular teapots for which they were designed.* [Emphasis supplied.]

In the case at bar, the evidence demonstrates that neither the glasses nor the wire retainers have use when separated from each other (R. 18, 19). See also D. Salemi & Sons v. United States, 19 CCPA 43, T.D. 44892; Park & Tilford v. United States, 1 Ct.Cust.App. 34, T.D. 31006; and L. T. Piver, Inc. v. United States, 66 Treas.Dec. 562, T.D. 47357, where glass bottles with metal caps were held to be an entirety.

The views expressed by the courts in the above cited cases are supported by the most recent expression made by the appellate court on December 8, 1966, in Miniature Fashions, Inc. v. United States, 54 CCPA ——, C.A.D. 894. In that case, certain so-called "cabana sets" consisted of tops or shirts and pants or shorts. The collector classified the shorts as clothing and articles of wearing apparel, not specially provided for, at 20 per centum ad valorem, and the shirts at 25 per centum ad valorem under paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. The importer claimed the shirts and shorts were not separably dutiable but but were entireties at the rate of 20 per centum ad valorem, as other articles of wearing apparel in said paragraph 919, as modified, supra. In effect the protest was against the classification of the shirts. The court stated that classification is determined by the condition of articles at the time of importation and cited United States v. Schoverling, 146 U.S. 76, 13 S.Ct. 24, 36 L.Ed. 893 (1892). The court then stated:

> * * * Viewed at that time, the evidence shows that they were designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both in wholesale and retail channels. When the parts of the merchandise are separated and either part is returned for credit, or when both parts are returned for credit, the parts of the unit are either given to charity or placed in the waste basket. Thus, there appears to be no commercial value of the separate articles comprising the unit except as they are joined as a unit.

See also United States v. Mannesmann-Meer, Inc., decided December 15, 1966, in 54 CCPA ——, C.A.D. 897.

■ Plaintiffs' contention (brief, page 5) that the imported glasses and wire retainers are not "permanently affixed or attached to each other when imported or after importation" is without merit. In James Betesh Import Co. v. United States, 40 Cust.Ct. 186, 189, C.D. 1981, the court stated that, although merchandise was imported unassembled, that is not a bar to its classification as an entirety, citing cases amongst which is the *Altman* case, supra, a quotation from which case is repeated in Charles Garcia & Co., Inc. v. United States, 45 CCPA 1, C.A.D. 663.

Although, as asserted in plaintiffs' brief, page 5, that the glass globe can easily be replaced, if broken, after installation into the lighting fixture, the record clearly discloses that such replacement must be made with the same type of glass globe which will fit with the

same type of wire retainer as used in the globe prior to breakage. In other words, type "O" glass globe cannot be used as a replacement for a type "V" or "U" or "K" glass globe because the "O" glass globe will not fit the "V" or the "U" or "K" wire retainer.

On the record and the applicable law, all claims in the protest are overruled and the collector's classification is affirmed.

Judgment will be entered accordingly.

OLIVER and WATSON, JJ., concur.