(C.D. 2118)

Mr. Jack Trager *v.* United States

United States Customs Court, First Division

(Decided September 22, 1959)

Barnes, Richardson & Colburn (E. Thomas Honey of counsel) for the plaintiff.
George Cochran Doub, Assistant Attorney General (Daniel I. Auster and Margaret M. Kiley, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., dissenting in part

OLIVER, Chief Judge: The merchandise involved in these protests is to be considered, for the purposes of tariff classification, as being of two different classes or types, i.e., decorative decanters and small keg-like containers. The decision herein was originally prepared by Judge Mollison, but, because of dissenting views with respect to the small keg-like containers, the case comes before the writer for preparation of the opinion of the majority of the court.

Attention will be directed, first, to the decorative decanter, which is in the shape of a wooden keg, with its stand, spigot, pail, and drip plate. The collector classified the collection of articles as an entirety and assessed duty thereon at the rate of 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified, as manufactures of which wood is the component material of chief value. Plaintiff claims that the individual articles should be classified as separate entities, i.e., the wooden keg under the provision for "Casks, barrels, and hogsheads (empty)" in paragraph 407 of the Tariff Act of 1930, as modified by T.D. 51802, carrying a dutiable assessment of 7½ per centum ad valorem, and the remaining articles at the appropriate rates according to the component material of chief value.

The following discussion with respect to the decorative decanters in question is taken from the views expressed by Judge Mollison in his original decision which, as previously stated, was prepared as the opinion of the court in this case. The basic issue in connection with these decorative decanters is whether the combination of articles is to be regarded as an entirety, as assessed, or whether the articles are separate entities and so classifiable, as claimed. Plaintiff contends that the several articles do not merge so as to form a new or distinct article having a character or name different from those of its components, and the decisions in the cases of *Selsi Co., Inc.* v. *United States*, 2 Cust. Ct. 371, C.D. 160; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680; and *Forest Lawn Memorial Park* v. *United States*, 68 Treas. Dec. 1129, Abstract 32547, are cited as in point. Defendant, on the other hand, contends that, upon assembly, the items form a type of decanter for liquor, appropriate and obviously intended for use as a decorative liquor server for a bar. The record shows that the items comprising the combined article were brought, invoiced, and imported as a unit, and were designed and intended to be sold and used together as a unit. Government counsel, in their brief, argue that, upon assembly, the separate character of each of the parts as a keg, stand, spigot, pail, and drip plate is subordinated to the creation and identity of a new and distinct

article, i.e., a type of decanter or liquor server. The cases of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232; *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619; and *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981, are cited in support of this position.

The type of entireties situation here involved is where two or more items are imported in the one shipment, and the question is whether or not they may be considered to be one entity for tariff classification purposes. We are of opinion that the basic rule of classification in that situation was enunciated by our appellate court in the case of *Altman & Co.* v. *United States, supra.* There, two items were imported in the same shipment, but separately packed, one item being ladies' corsets and the other being lace trimmings. There were an equal number of corsets and lace trimmings, and the evidence showed that the corsets and trimmings were salable separately, and on occasion had been so sold, but that—

* * * these goods were imported for the purpose of making therefrom a finished and completed article of commerce [i.e., a lace-trimmed corset]; that the various parts were designed to be used together and not separately, and that this was, in fact, the actual major use which was made of them by the importers.

The situation in the case at bar exhibits a close analogy, in that there were an equal number of kegs, stands, etc.; that, while the evidence is that they were salable separately, they were, in fact, imported for the purpose of making, by assembly thereof, a finished and completed article of commerce, to wit, a decorative decanter or liquor server; that the various parts were designed to be used together and not separately; and that this was, in fact, the actual major use which was made of them by the importer.

In such a situation, there being no evidence of contrary long-continued administrative practice, judicial decision, or manifest legislative intent, our appellate court ruled, in the *Altman* case, that—

* * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or included in separate packages, and even though said parts might have a commercial value and be salable separately.

We are of the opinion that a like ruling is applicable in this case, and we, therefore, hold that the decorative decanters in question, which are identified on the invoices by the description "new oakwood kegs with 4 yellow brass hoops with wooden stand, yellow brass dripcan and yellow brass tap," to be properly classifiable as entireties, as manufactures of wood, not specially provided for, as assessed by the collector.

The other class or type of merchandise involved herein consists of small keg-shaped articles that the collector also classified under paragraph 412, as modified, *supra*. Plaintiff claims classification therefor under the provision in paragraph 407 of the Tariff Act of 1930, as modified, for—

Casks, barrels, and hogsheads (empty), of wood, not specially provided for (except beer barrels and beer kegs) * * *.

The writer's views, as hereinafter set forth, concerning these small, keg-like containers, were presented, originally, as a dissenting opinion, and now appear as those of the majority of the court.

It is our considered opinion that these small keg-shaped articles are not dutiable as casks, barrels, or hogsheads, but as manufactures of wood, as assessed. The master rule of construction in customs litigation is to ascertain the intent of Congress (*United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, T.D. 46078). It has also been stated by our appellate court that "tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court." (*Marshall Field & Co.* v *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676.) This we understand to mean that the mythical "man in the street," the buyer or dealer handling various types of merchandise, knows the common or ordinary meaning of terms used in the business world and especially in the particular industry or business in which he is engaged.

Samples have been held to be potent witnesses. (*United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C.C.P.A. (Customs) 26, C.A.D. 120.) Before giving in detail the basis for our conclusion herein, it is necessary to describe in detail the "keg" which is before us. It is made like a keg; it looks, at first glance, like a keg, but, in our opinion, it is not. The imported article stands on one end; it is $7\frac{1}{2}$ inches high. The top and the bottom measure about $5\frac{1}{2}$ inches across (diameter). The small staves are so formed and put together that the diameter at the center is about 6 inches. Around this keg-shaped article, there are four brass hoops. The top and bottom hoops are about five-eighths of 1 inch wide; the other two measure about one-half inch in width. These hoops are attached to the article and are held in place by several brass nails, which appear to be brass escutcheon pins. It is obviously designed to stand on one end (bottom), and it is equally obvious that the article is not designed as a shipping container of any sort. The bottom is permanently closed by an inset solid bottom, not removable. The other end (top), however, has no permanent closure but has, on the sample before us (plaintiff's exhibit 1), a removable cover with a knob handle. This cover measures about

5 inches overall, with a smaller diameter portion measuring about 4 inches, which, when placed on the top, extends into the article to hold the cover in place. It is clear—in fact, the record establishes—that this article, shaped like a keg, is actually used as a jar for holding cookies or other small articles. It is not the type of container, such as "casks," "barrels," or "hogsheads," that were contemplated by the Congress in enacting amended paragraph 407, *supra.*

In our opinion, this keg-like container is clearly distinguishable from the merchandise covered by the decision of our appellate court in *George F. Dewey* v. *United States*, 25 C.C.P.A. (Customs) 174, T.D. 49272, which is discussed at length in counsel's brief to support plaintiff's position. In the cited case, the article before the court was a wooden container, having a capacity of 500 gallons. In the case of *Fred. Mulhens, Inc.* v. *United States*, 69 Treas. Dec. 893, T.D. 48323, which is referred to in the *Dewey* case, the wooden container had a capacity of 160 gallons. The *Dewey* case, *supra*, decided in 1937, was the first expression on this subject by our appellate court, and we have been unable to find, after diligent and thorough research, any subsequent decision of a contested case in which the *Dewey* case has been cited. As hereinabove noted, the merchandise involved therein consisted of a wooden container, having a capacity of 500 gallons. The court said, after noting the contentions of the parties (p. 176) :

> The sounder view, we think, is that contended for by counsel for importer to the effect that the words "Casks, barrels, and hogsheads (empty)," as used in paragraph 407, should be construed according to their common meaning, in the absence of any proof of a commercial meaning differing therefrom.

With the foregoing, we are in complete accord. It is our opinion that while the common (dictionary) meaning of a hogshead refers to a capacity of 63 gallons, it might well be that a container with a capacity of 160 gallons (*Mulhens* case, *supra*) or even 500 gallons (*Dewey* case, *supra*) should be held to be dutiable as such a container. However, a cookie jar with a half-gallon capacity would not be dutiable under paragraph 407, as amended, *supra*, solely because it is partially made in the likeness of a cask or keg. The court in the *Dewey* case, further states (p. 177) "* * * so far as we are advised, no *definition* of the terms barrel, cask, and hogshead as an empty physical entity, which would confine such articles to any particular dimension or size, has ever been laid down by statute." [Italics quoted.] All of the definitions of the word "cask," quoted by our appellate court in the *Dewey* case, emphasize the essential feature, or general characteristic, i.e., flat ends or heads. This feature of a cask is similarly recognized in the Summary of Tariff Information, 1929, where, in referring to the three kinds of articles *eo nomine* provided for in the tariff provision in controversy, the following appears (p. 935) :

CASKS, BARRELS, HOGSHEADS EMPTY

**Description and uses.**—Casks, barrels, and hogsheads are containers, constructed of staves, with a distinctive bilge and *flat ends.* \* \* \* [Italics supplied.]

The small keg-like container here under consideration is clearly distinguishable. It is not made with two flat ends; one of the ends is open and has a removable lid or cover, fitted with a small knob that serves to aid the user in gaining access to the contents.

In the *Dewey* case, the court, referring to the 500-gallon container involved therein, said (p. 178) :

We do not regard the statute as being in any sense ambiguous. Hence, there is no occasion for resort to the *nocitur a sociis* rule in order to construe it. It requires no construction. [Italics quoted.]

We do not understand, from the foregoing quotation, that our appellate court intended to lay down a general rule and to say that we might not, in a proper case, find an article before us which quite definitely raises the question as to whether the Congress intended the language it used in paragraph 407, hereinabove set forth, to cover such an article as is now before us. If Congress had intended to include within the said paragraph all types of wooden containers, including kegs, the legislators could have used an appropriate general clause, such as, "and like or similar articles." The omission thereof implies a congressional intent to limit the scope of the paragraph sufficiently so as to exclude from its provisions the small keg-like container now before us. This article is a novelty item. It is highly decorative and evidently designed to attract attention when displayed on a shelf or counter. Very aptly, it responds to the designation of a wooden cookie jar. In our opinion, it is not within the class of articles contemplated by paragraph 407, as amended, *supra*, under which plaintiff seeks classification for the merchandise.

The protests are overruled in all respects and judgment will be rendered accordingly.

### OPINION DISSENTING IN PART

MOLLISON, Judge: I am in accord with that portion of the decision rendered by my colleagues which holds that the combination articles, consisting of a container, stand, spigot, pail, and drip plate, form a single entity for tariff purposes and were properly assessed with duty by the collector as entireties under the provision for manufactures of which wood is the component material of chief value, not specially provided for, in paragraph 412 of the Tariff Act of 1930, as modified.

I am, however, constrained to dissent from that portion of the decision which applies the same classification to the separately invoiced containers. I am of the opinion that these are properly classifiable under the provision in paragraph 407 of the said act, as modified, for—

> Casks, barrels, and hogsheads (empty), of wood, not specially provided for (except beer barrels and beer kegs) * * *,

as claimed by the plaintiff.

That merchandise consists of wooden containers having the shape commonly associated with barrels or casks, i.e., they are round, longer than they are wide, and have a bulge, or their greatest diameter, at the center. They are made with oak staves and one fixed wooden head, and are bound by four metal hoops. The other end of some of the articles has a loose-fitting wooden lid or cover, while the balance of the articles has a cover made of a plastic material, which can be screwed on for a tighter closing than that provided by the wooden covers. All of the articles were imported empty, have a liquid capacity of one-half gallon, and there does not seem to be any question but that they are not beer barrels or beer kegs.

All of the kegs are liquid-tight, and, according to the record, are used for holding and dispensing such diverse items as pretzels, popcorn, cookies, chocolates, or pickles. The evidence establishes that they are sold in the United States as "half-gallon kegs."

In the *Dewey* case, discussed by the majority in its opinion, this court had before it for consideration the tariff classification of wooden containers of 500-gallon capacity, which had been classified for duty purposes, as was the merchandise at bar, under the manufactures-of-wood provision in paragraph 412 of the Tariff Act of 1930, and, like the merchandise at bar, was claimed to be properly dutiable under the provision in paragraph 407 of the said act for "casks, barrels, and hogsheads."

In determining the issue, this court cited prior decisions wherein it had been held that the capacity of the container was controlling as to whether it was a cask, barrel, or hogshead, and held that, inasmuch as the 500-gallon capacity of the imported containers was in excess of any capacity indicated by lexicographers for casks, barrels, or hogsheads, they were excluded from the tariff provision therefor. *George F. Dewey* v. *United States*, 70 Treas. Dec. 1193, Abstract 35249.

On appeal, the decision of this court was reversed (*George F. Dewey* v. *United States*, 25 C.C.P.A. (Customs) 174, T.D. 49272), the majority of our appellate court pointing out that the terms "casks, barrels, and hogsheads," in their common understanding, had two general meanings, the primary meaning being that of the *name* of a container in terms of its form and structure, but having no reference to the size or quantity which it might hold, and the other meaning being as a unit of measure. As used in paragraph 407, our appellate court held, the terms were the *names* of articles, and, in applying such construction in tariff classification under paragraph 407, it was to be used without reference to the size or measure of the article.

I note that, during the course of the appeal in the *Dewey* case, *supra*, counsel for the Government therein advanced the argument, very similar to the holding of the majority herein, i.e., that the articles intended to be covered by the provisions of paragraph 407 were only those which, by their nature and use, as well as their size, were primarily commercial shipping containers. That argument, however, did not meet with the concurrence of the majority of our appellate court.

I am of the opinion that the decision of the majority of our appellate court in the *Dewey* case constitutes authority controlling the action to be taken herein. The kegs at bar, in form and structure, certainly respond to the primary definition of the terms "casks" or "barrels," as set forth in the majority opinion in that case. The facts that the kegs have one end which is removable, rather than fixed, and that that end has a knob or handle to aid the user in gaining access to the contents, I regard as immaterial to the tariff classification of the articles. Certainly, a container which otherwise would be a cask or barrel would be none the less so because in place of one end it had a removable lid or cover with a knob or handle.

In my view, the articles at bar do not simulate kegs—in name, form, and structure, they *are* kegs, which is a form of casks or barrels. A cask or barrel is a container of a certain form and structure which may hold anything for any purpose—transportation, storage, or dispensing. The fact that a small keg may be used in the manner in which jars are used to hold and dispense pretzels, popcorn, cookies, chocolates, or pickles does not make it a jar—it is still a keg and what it may hold has nothing to do with what it is.

Our appellate court has held that neither size, capacity, nor commercial character or use as shipping containers is to be weighed as a factor in determining the classification of casks, barrels, or hogsheads, and I believe that we should find the kegs at bar to be embraced by the common meaning of the term "casks" or "barrels" and to be properly classifiable under those terms, as used in paragraph 407, *supra*.

I would, therefore, sustain the protests as to the items which are described on the invoice involved in the entry covered by protest 329914–K as—

504 new oakwood kegs with wooden lid, 4 yellow brass hoops varnished outside

and as—

60 new oakwood kegs with plastic screw covers, 4 yellow brass hoops varnished outside,

and, to that extent, respectfully dissent from the decision of the majority herein.